UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                          Chapter 13

Mark P. Sanford, and                            Case No. 15-51166
Amie L. Mongeau,
                                                Hon. Phillip J. Shefferly
         Debtors.
_____/

## OPINION GRANTING MOTION FOR HARDSHIP DISCHARGE AND DENYING MOTION TO DISMISS

### Introduction

The debtors confirmed a plan in this chapter 13 case but passed away before completing all the payments under the plan. The personal representative for the deceased debtors now requests a hardship discharge. The chapter 13 trustee requests dismissal. For the reasons in this opinion, the Court will grant the motion for hardship discharge and deny the motion to dismiss.

### Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(a).

### Facts

On July 27, 2015, Mark P. Sanford and Amie L. Mongeau ("Debtors") filed a joint petition as husband and wife under chapter 13 of the Bankruptcy Code. The

Debtors had modest income. Mr. Sanford received disability payments and Ms. Mongeau worked in sales for a hotel company. Their largest asset by far was their home at 13290 Tracey Road, Manchester, Michigan ("Home"), but the Debtors did not have any equity in it. On their schedules, the Debtors estimated the value of the Home to be $310,000.00 with two creditors holding mortgages on it. Greenstone Farm Credit ("Greenstone") was listed as holding two mortgages with a total balance of $198,942.00. The United States Department of Agriculture ("USDA") was listed as holding a junior mortgage with a balance of $226,000.00. Not counting the under-secured portion of the USDA's claim, the Debtors' schedules listed non-priority unsecured debts totaling $167,628.50, the vast majority of which they described as student loan debt owing to "Fed Loan Serv."[1] The liquidation analysis that the Debtors filed with their plan showed that in a chapter 7 liquidation there would be no distribution to the Debtors' unsecured creditors.

On December 23, 2015, the Debtors confirmed their plan. The plan required the Debtors to make monthly payments of $837.00 for 60 months. The plan provided for the Debtors to retain the Home. Greenstone and the USDA consented to confirmation. Greenstone's secured claim would be paid in full under the plan. The USDA's secured claim was allowed in the amount of $36,605.00, which would be paid in full under the plan, with the balance of its claim allowed as a non-priority unsecured claim in the

---

[1] The U.S. Department of Education filed a proof of claim for student loan debt in the amount of $206,428.79.

amount of $206,247.27. This unsecured claim would likely not be paid at all under the plan because the plan provided for a required distribution of 0% to non-priority unsecured claims.

The Debtors made most of their payments for the first two years after confirmation but modified their plan in December, 2017 to excuse some payments that they had missed because of health issues and a change in Ms. Mongeau's employment, and to increase their plan payments going forward. Although the Debtors continued to make payments under their modified plan, they continued to suffer from serious, worsening medical conditions.

On June 28, 2019, Mr. Sanford passed away. On January 23, 2020, Ms. Mongeau passed away.

On June 24, 2020, the chapter 13 Trustee ("Trustee") filed a motion to dismiss ("Motion to Dismiss") (ECF No. 75). The Trustee alleges in the Motion to Dismiss that the Debtors are delinquent in their plan payments in the total amount of $8,746.54 and that their overall pay history in this case is 81%.

On July 9, 2020, Justin Boehm ("Boehm"), the son of Ms. Mongeau and the stepson of Mr. Sanford, filed an objection to the Motion to Dismiss that states that any default in plan payments is due to the ongoing medical problems and eventual deaths of the Debtors. Boehm further states in the objection that he is the sole heir and beneficiary of the Debtors and that he has filed the required paperwork with the

Washtenaw County Probate Court to become the personal representative of both Debtors.

On the same day that he filed his objection to the Motion to Dismiss, Boehm also filed a motion for hardship discharge ("Motion for Hardship Discharge") (ECF No. 82). Boehm acknowledges in the Motion for Hardship Discharge that the Debtors did not complete their plan payments but requests the Court grant the Debtors a hardship discharge. Attached to the Motion for Hardship Discharge are two letters of authority signed on July 9, 2020 by the Washtenaw County Probate Court, one appointing Boehm as the personal representative for Mr. Sanford's estate and the other appointing Boehm as the personal representative for Ms. Mongeau's estate.

The Trustee filed an objection to the Motion for Hardship Discharge. No creditors or other parties filed a response.

On August 6, 2020, the Court held a hearing on the Motion to Dismiss and the Motion for Hardship Discharge. By the time of the hearing, the plan delinquency had grown to more than $10,000.00. In addition, the Trustee noted that the Debtors failed to pay into their plan some profit sharing and bonus payments they had received over the life of the plan. The Court permitted the Trustee and Boehm to each file a post-hearing supplement to their papers. They each did so. The Court then adjourned the hearing until August 20, 2020. By the time of the adjourned hearing, Boehm had also provided the Trustee with documentation to show that any delinquency in plan payments that occurred before the Debtors passed away was due to their ongoing

medical problems. At the conclusion of the adjourned hearing, the Court advised the parties that it would issue this opinion.

### The Motion to Dismiss

The Motion to Dismiss is governed by § 1307(c) of the Bankruptcy Code which provides that the Court "may dismiss a case under this chapter . . . for cause[.]" The statute provides a non-exclusive list of examples of circumstances and events that constitute cause, one of which in § 1307(c)(6) is "material default by the debtor with respect to a term of a confirmed plan[.]" Even when there is a demonstration of cause, this section does not require the Court to dismiss the case but provides the Court with discretion to do so. See Wellman v. Salt Creek Valley Bank (In re Wellman), 337 B.R. 729 (Table), 2006 WL 189985, at *3 (B.A.P. 6th Cir. Jan. 26, 2006) (bankruptcy court acted within its discretion in dismissing a chapter 13 case after finding that the debtors were in material default).

The Trustee alleges in the Motion to Dismiss that the Debtors' default in plan payments is material and requests that the Court exercise its discretion under § 1307(c) and dismiss this case.

Boehm does not dispute the alleged default, nor that it is material. Rather, Boehm argues that the Court should not exercise the discretion that § 1307(c) confers because there are grounds for a hardship discharge in this case under § 1328(b) of the Bankruptcy Code.

The Court finds that the Debtor's delinquency in payments is a material default under their plan and that it provides cause to dismiss this case. However, the Court also finds that its discretion under § 1307(c) to dismiss for cause is best exercised by first considering whether the Debtors are eligible for a hardship discharge as Boehm has requested. If so, the Court will deny the Motion to Dismiss and allow the case to proceed to the hardship discharge. If not, the Court will grant the Motion to Dismiss.

## The Motion for Hardship Discharge

The Motion for Hardship Discharge is governed by § 1328(b), which provides that the Court "may grant a discharge to a debtor that has not completed payments under the plan" but only if the Court finds the following:

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
(3) modification of the plan under section 1329 of this title is not practicable.

The party moving for a hardship discharge has the burden to show that all three elements in this subsection are present. In re Grice, 319 B.R. 141, 143 (Bankr. E.D. Mich. 2004) (citing Bandilli v. Boyajian (In re Bandilli), 231 B.R. 836, 839 (1st Cir. B.A.P. 1999)). Even if a party meets that burden, the statute does not require the Court to grant a hardship discharge but leaves it to the discretion of the Court. In re Grice, 319 B.R. at 146-47.

At the initial hearing, the Trustee agreed that § 1328(b)(2) is met because unsecured claims against the Debtors would have received no distribution in a chapter 7 liquidation. The Trustee also conceded at that hearing that § 1328(b)(3) is met because a modification of the Debtors' plan, which only has a few more months to run, is not practicable because the Debtors are now deceased and there is no identified source of income to make the remaining plan payments. But the Trustee did challenge at the initial hearing the remaining element under § 1328(b)(1) — whether the failure to complete the plan payments was due to circumstances for which the Debtors should not justly be held accountable. The Trustee readily agreed that plan payments that came due after the Debtors passed away met this standard but questioned whether plan payments that came due while the Debtors were still alive also met this standard. In between the initial hearing and the adjourned hearing, Boehm provided the Trustee with documents showing that payments missed before the Debtors passed away were not made because of Ms. Mongeau's treatment for cancer at that time. At the adjourned hearing, the Trustee agreed that those missed payments also met the standard of § 1328(b)(1).

Even though all three elements of § 1328(b) are present, the Trustee opposes the Motion for Hardship Discharge on the ground that it is not permitted under Fed. R. Bankr. P. 1016.

# Federal Rule of Bankruptcy Procedure 1016

Sections 1307(c) and 1328(b) — the statutory sections on which the Trustee's and Boehm's motions are based — do not say how they apply in the event of a debtor's death. Nor is there any other section of the Bankruptcy Code that specifically addresses the death of an individual debtor in a pending case. However, Fed. R. Bankr. P. 1016, titled "Death or Incompetency of Debtor," does address this situation:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

The text of Rule 1016 makes clear that a bankruptcy case in which the debtor is an individual does not automatically end if the debtor dies while the case is pending. If the case is a chapter 13 case, the rule identifies two possible paths the case may take after the debtor dies.

One path is that the case "may be dismissed." The discretion afforded by this rule mirrors the discretion afforded by § 1307(c). And the absence of any specific criteria for the Court to consider under Rule 1016 suggests that there is no reason to deviate from the "cause" standard under § 1307(c) when considering whether to dismiss a case where an individual debtor has died.

The other path — continuation of the case — is a little more complicated and requires consideration of several issues. The rule states that if "further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death . . . had not occurred." The first issue this text raises is what does "further administration" mean? A second issue is who are the parties whose "best interest" must be served by further administration? A third issue is what does "conclusion in the same manner" mean? Does it require that the plan be completed, or does it encompass other dispositions — such as conversion to chapter 7 or the grant of a hardship discharge?

On the first issue — further administration — the Trustee does not challenge Boehm's standing or authority to act for the Debtors as their personal representative appointed by the Washtenaw County Probate Court.[2] But the Trustee does challenge whether any further administration is possible in this case. The Trustee notes that Boehm is not proposing to make the remaining payments that are required under the Debtors' plan. And the Trustee points out that he does not have any funds on hand to distribute to the Debtors' creditors. If further administration requires the receipt or

---

[2] In Michigan, "to acquire the powers and undertake the duties and liabilities of a decedent's personal representative, a person must be appointed by the register or by court order, must qualify, and must be issued letters." Michigan Compiled Laws Annotated § 700.3103. Once appointed, "[e]xcept as to a proceeding that does not survive the decedent's death, a personal representative of a decedent domiciled in this state has the same standing to sue and be sued in the courts of this state and the courts of another jurisdiction as the decedent had immediately prior to death." Michigan Compiled Laws Annotated § 700.3703(3).

distribution of money, then the Trustee is right, there is no further administration that is possible in this case. But is further administration so limited?

The Bankruptcy Code and the Bankruptcy Rules do not define further administration. Nor do the Advisory Committee Notes to Rule 1016 explain what the phrase means in the context of the rule. Although neither the Supreme Court nor the Sixth Circuit Court of Appeals has spoken on what the phrase means, there are reported decisions from district courts and bankruptcy courts outside the Sixth Circuit that have had to apply the phrase in a chapter 13 case where the debtor has died. Some have found that further administration was possible on their particular facts, In re Shorter, 544 B.R. 654 (Bankr. E.D. Ark. 2015) (granted hardship discharge); In re Inyard, 532 B.R. 364 (Bankr. D. Kan. 2015) (same); and In re Hoover, No. 09-71464, 2015 WL 1407241 (Bankr. N.D. Ca. Mar. 24, 2015) (same), while others reached the opposite conclusion on their particular facts. In re Miller, 526 B.R. 857 (D. Colo. 2014) (affirming denial of a hardship discharge); In re Hennessy, No. 11-13793, 2013 WL 3939886 (Bankr. N.D. Cal. July 29, 2013) (same); and In re Spiser, 232 B.R. 669 (Bankr. N.D. Tex. 1999) (on reconsideration, vacating order of conversion to chapter 7 and dismissing case). The cases have split results but none of them provide a working definition or criteria to determine what further administration means.

Absent a controlling definition of a phrase, the Court ordinarily looks to the common meaning of the words that make up the phrase. The dictionary definition of "further" is "additional" or "to a greater degree or extent." Merriam-Webster

Dictionary.com, https://www.merriam-webster.com/dictionary/ (last visited Aug. 27, 2020). The dictionary definition of "administration" is the "performance of executive duties" or the "act or process of administering something." Id. Taken together, the dictionary definitions of the two words, while obviously not controlling, do not support the Trustee's contention that there must be money for a chapter 13 trustee to collect or distribute in order to find that further administration is possible under Rule 1016.

The Supreme Court frequently instructs federal courts to also consider the context of words in a statute or rule when trying to ascertain their meaning. The words of a statute should not be read in isolation, but instead "'in their context and with a view to their place in the overall statutory scheme.'" Babcock v. Commissioner of Social Security, 959 F.3d 210, 214 (6th Cir. 2020) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989))). With that in mind, a possible clue to what further administration means in a bankruptcy case may be found in the structure and organization of the Bankruptcy Code. Chapter 3 of the Bankruptcy Code is titled "Case Administration." It has four subchapters. Subchapter III is titled "Administration" and contains eleven Bankruptcy Code sections. Those sections address a wide variety of matters, some involving money, others involving creditor meetings, notices to be sent, dismissal, conversion, opening and closing of cases and records of cases. This subchapter, like the dictionary definition of administration, does not support the

Trustee's contention that further administration is only possible where there is more money for a chapter 13 trustee to collect or distribute.

Another clue to what further administration means in a chapter 13 case can be found in the description of a chapter 13 trustee's duties in § 1302 of the Bankruptcy Code. Far from just being a receptacle to receive and disburse cash, a trustee has many responsibilities under that section including furnishing information, investigating financial affairs, assisting the debtor, providing written notices and appearing and being heard on valuation of property, confirmation and modification of a plan. This broad array of tasks suggests that further administration of a chapter 13 case does not necessarily require more payments to be made under a plan.

Absent a definition in the statute or rule, and absent a controlling case to the contrary, the Court holds that the phrase further administration as used in Rule 1016 does not require that there be additional money for a chapter 13 trustee to collect or distribute. Other tasks may constitute further administration for purposes of Rule 1016. In this case, the filing, consideration, and adjudication of the Motion for Hardship Discharge satisfies the rule's requirement that further administration must be possible. See In re Levy, 2014 WL 1323165, at *2 (Bankr. N.D. Ohio Mar. 31, 2014) (finding that "further administration" was not limited to making payments under the chapter 13 plan, but "encompassed a hardship discharge" to a deceased co-debtor).

The second issue under Rule 1016 is whether the further administration of the case "is in the best interest of the parties." At the adjourned hearing, the Court asked

both the Trustee and Boehm who are the parties whose interest must be considered. They both agreed that the Debtors' pre-petition secured and unsecured creditors are such parties. The Trustee did not identify any other parties whose interest must be considered but Boehm argued that there are other parties whose interest must be considered. Those parties are the Debtors, even though they are now deceased, and the Debtors' post-petition creditors.

Before deciding whose interest must be considered under Rule 1016, and how such interest may be impacted by a hardship discharge, it is worth noting that there is no dispute between Boehm and the Trustee about the potential pool of assets that exists for anyone in this case. Boehm and the Trustee agree that the Debtors' only asset is the Home. As mentioned earlier, the Debtors estimated the value of the Home at $310,000.00 when they filed their bankruptcy case. There was no equity at that time because the mortgages held by Greenstone and the USDA totaled more than $425,000.00. Under the Debtors' plan, the secured claim of the USDA was reduced — in other words, crammed down under § 506(d) of the Bankruptcy Code — and allowed in the amount of $36,605.00 with the balance of the USDA's claim, consisting of $206,747.27, allowed as an unsecured claim. At the hearing on August 6, 2020, Greenstone, although not opposing the Motion for Hardship Discharge, advised the Court that the balance owing on its two mortgages on the Home now exceeds $284,000.00 and that there is a tax lien on the Home of approximately $4,900.00. Greenstone further advised the Court that it recently obtained an appraisal of the Home

at $300,000.00. At the adjourned hearing on August 20, 2020, Boehm advised the Court that his realtor believes the home to have a value of $375,000.00.

The Court agrees with Boehm and the Trustee that Greenstone is a party whose interest must be considered under Rule 1016, but Greenstone's interest is not impacted one way or the other by the Motion for Hardship Discharge. The automatic stay has already been lifted for Greenstone and it appears that whatever value is ascribed to the Home, it is enough to ensure that Greenstone will be paid in full.

The USDA is a different story. If the Motion for Hardship Discharge is granted, the USDA's junior mortgage on the Home is limited to its allowed secured claim of $36,605.00, less any payments it received under the Debtors' plan. On the other hand, if the Motion for Hardship Discharge is denied, and the case is dismissed, the cramdown of the USDA's secured claim under the plan is no longer in effect. The reason is because the cramdown is a lien avoidance under § 506(d). On dismissal of a case, § 349(b)(1)(C) of the Bankruptcy Code reinstates any lien avoided under § 506(d). That means that on dismissal, the allowed secured claim of the USDA against the Home would no longer be limited to $36,605.00 as it was under the Debtors' plan. Instead, the USDA's entire allowed claim — including the previously unsecured portion of $206,747.27 — would now be secured by its junior mortgage on the Home. Whether or not this will make a difference in how much the USDA gets paid on a sale of the Home is unknown and depends entirely on the amount of the sale. But the salient point here is that if the Motion for Hardship Discharge is granted, then the USDA will

- 14 -

have a much smaller junior mortgage against the Home than it will have if the Motion for Hardship Discharge is denied and the case is dismissed. The Court finds that USDA's interest is best served by denying the Motion for Hardship Discharge.

The interest of the Debtors' pre-petition unsecured creditors does not appear to be impacted one way or the other by the Motion for Hardship Discharge. If the motion is granted, all their claims will be discharged. If the motion is denied they will have the legal right to file claims in the Debtors' probate estate but that's a worthless right because there will not be any assets to pay such claims. As explained above, if the Motion for Hardship Discharge is denied and this case is dismissed, the USDA's junior mortgage against the Home will now include an additional $206,747.27. Whatever the eventual sale price of the Home, whether the $300,000.00 estimated by Greenstone or the $375,000.00 estimated by Boehm, there is no evidence that the sale proceeds will ever be anywhere close to paying off the two mortgages held by Greenstone, now totaling over $283,000.00, and the junior mortgage held by the USDA, once reinstated with a total more than $240,000.00. Therefore, the interest of the Debtors' pre-petition creditors is not impacted by a hardship discharge. Either way they will get nothing.

The Court rejects Boehm's argument that the Debtors are parties whose interest must be considered under Rule 1016. Now that they are deceased, the Debtors have no need of a fresh start. And they no longer have any cognizable interest that is impacted one way or the other by a hardship discharge. On a related point, although Boehm does not expressly argue that the Debtors' heirs are parties whose interest must

be considered under Rule 1016, some of the cases cited in his supplemental brief do contain some discussion of the interest of heirs. See In re Miller, 526 B.R. 857 (D. Colo. 2014) (affirming denial of surviving spouse's motion for hardship discharge, noting that the spouse, as the debtor's heir, unfairly sought to benefit from a bankruptcy case she did not file by leaving a lien strip intact); In re Inyard, 532 B.R. 364 (Bankr. D. Kan. 2015) (raising but not deciding the question of whether heirs are parties in interest). However, there is nothing in the Bankruptcy Code to suggest that the interest of the heirs of a party in a bankruptcy case — whether that party is a debtor or a creditor — is a cognizable interest when the Court is considering whether to grant relief under the Bankruptcy Code. The Court will not take the interest of an heir of a debtor into consideration.

That leaves the Debtors' post-petition creditors. In contrast to the interest of an heir of a debtor in a bankruptcy case, the interest of post-petition creditors is a cognizable interest in a chapter 13 case. Section 1305 of the Bankruptcy Code expressly recognizes that a debtor in a chapter 13 case may incur post-petition debt and permits the filing of post-petition claims. Section V.Q. of the Debtors' plan also expressly addresses the incurring of post-petition debt. How is the interest of the post-petition creditors impacted by a hardship discharge in this case?

Boehm estimates that the Debtors incurred at least $35,000.00 of post-petition medical expenses and as much as $70,000.00 of total post-petition claims. The Trustee does not dispute these estimates. If the Motion for Hardship Discharge is granted, it

does not discharge the claims of those post-petition creditors. They will still be free to file claims in the Debtors' probate estate. Likewise, if the Motion for Hardship Discharge is denied, those post-petition creditors will also be free to file claims in the Debtors' probate estate. Either way, they will have the legal right to file claims in the probate estate. But there is a big difference in their prospects for any recovery depending on whether the Motion for Hardship Discharge is granted. If the motion is granted, as explained earlier, the secured claim of the USDA against the Home is limited to $36,605.00 less any payments received under the Debtors' plan. If the motion is denied, the USDA's junior mortgage against the Home balloons to over $240,000.00. Therefore, if the Motion for Hardship Discharge is granted, there is a greater chance that there will be equity in the Home after the mortgages on it are paid off. That means that the post-petition creditors will have a real shot at getting a distribution out of the proceeds of sale of the Home if the Motion for Hardship Discharge is granted, but will have no shot at the proceeds of sale if the Motion of Hardship Discharge is denied. The Court finds that the interest of the Debtors' post-petition creditors is best served by granting the Motion for Hardship Discharge.

To recap, there are some parties whose interest will be impacted by a hardship discharge. Greenstone will not be impacted. The Debtors' pre-petition creditors will not be impacted. The USDA will be negatively impacted because it will have a smaller junior mortgage on the Home. The Debtors' post-petition creditors will be positively

impacted because they will have a greater chance of getting a distribution on any claims that they file in the Debtors' probate estate.

In the Court's view, the interest of the Debtors' post-petition creditors outweighs the interest of the USDA. Here's why. The USDA was served with the Motion for Hardship Discharge and did not object. The USDA is not an unsophisticated party. It is a large governmental unit that appears frequently in bankruptcy cases in this Court and routinely demonstrates a full understanding of its rights and remedies and those of debtors and other creditors. The USDA expressly consented to the treatment of its claim under the Debtors' plan. The Court has no reason to believe that its absence of objection to the Motion for Hardship Discharge was in any way inadvertent. Rather, because the USDA fully appeared and participated throughout this case, the Court infers that the USDA has made a reasoned, informed decision to consent to the relief requested. On the other hand, the Court can draw no such inference about the Debtors' post-petition creditors. They are not parties to the bankruptcy case who were required to be served with the Motion for Hardship Discharge or the Motion to Dismiss. In these circumstances, where the interest of a single creditor cuts one way, and that creditor has not objected, and the interest of other creditors cuts another way, and those creditors did not have an opportunity to object, the Court balances the competing interests and comes down in favor of those creditors who did not have the opportunity to be heard. That's the post-petition creditors. The Court finds under Rule 1016 that the best interest of the parties is served by granting a hardship discharge.

The Court has now found that further administration is possible, and that the best interest of the parties favors a hardship discharge, but that's not the end of the inquiry under Rule 1016. The next issue is whether the case may "be concluded in the same manner, so far as possible, as though the death" of the Debtors has not occurred.

Under the Bankruptcy Code, if a chapter 13 case is not dismissed under § 1307(b) or (c) or Rule 1016, it can only be concluded in one of three ways: conversion to another chapter under § 1307(a) or (c), discharge under § 1328(a), or hardship discharge under § 1328(b). If the Debtors were still alive, they could request any of these three forms of relief. Given their serious health problems, it is unlikely that they could have completed their plan and obtained a discharge under § 1328(a). But they could have requested their case be converted to chapter 7. Or they could have requested a hardship discharge under § 1328(b) because of their serious health problems. Why can't this case still be concluded in one of those two ways — in other words, "in the same manner"? The Trustee concedes that Boehm could continue to make all the payments under the plan and obtain a discharge for the Debtors under § 1328(a). If Boehm's authority as the personal representative for the Debtors allows him to do that, then it follows that his authority must also allow him to conclude this case by requesting conversion to another chapter or by requesting a hardship discharge under § 1328(b).[3]

---

[3] The Court acknowledges that the Court previously denied a motion to convert from chapter 13 to chapter 7 that was filed by a personal representative of a deceased debtor in an unpublished order in In re Evans, Case No. 08-71076. That decision does not bind the Court in this case. More important, on further reflection, the Court no longer believes that order to be a correct interpretation of Rule 1016.

The Court finds that this case can be concluded in the same manner as though the Debtors' deaths had not occurred.

In sum, the Court holds that further administration of this case is possible and in the best interest of the parties and that the case may be concluded in the same manner as though the Debtors had not passed away during the case. The Court further holds that Rule 1016 does not bar Boehm from requesting a hardship discharge for the Debtors.

## Conclusion

To avoid leaving a misimpression, the Court observes that the Trustee was not unsympathetic or unreasonable in responding to Boehm's request for a hardship discharge for his deceased parents. The Trustee properly raised legitimate concerns over what Rule 1016 means, especially given the absence of any controlling case law on the subject. There is no absolute right to a bankruptcy discharge, and it is therefore important that a chapter 13 trustee, and the Court, take seriously the responsibility of ensuring that a discharge of debts only be granted where the Bankruptcy Code permits and the facts warrant.

The Court's holding that Rule 1016 does not bar a hardship discharge does not mean that the Court *must* grant a hardship discharge, only that the Court *may* do so. All the elements of § 1328(b) must still be proven, and even then, the Court still retains the discretion both under § 1328(b) and Rule 1016 to deny a hardship discharge if the facts in the case convince the Court that it would not be proper, just or wise to grant a

hardship discharge in the particular circumstances of the case. Further, Rule 1016 expressly reserves to the Court the discretion to decide whether to continue a chapter 13 case at all or just dismiss it if the debtor dies during the pendency of the case. Section 1307(c) affords similar discretion. In short, the Bankruptcy Code and the Bankruptcy Rules contain plenty of safeguards to ensure that a hardship discharge is not unjustly or imprudently granted. And, of course, not just anyone can request a hardship discharge for a deceased debtor. They must have the legal authority to make such request, as Boehm does as the Debtors' duly appointed personal representative.

The Debtors in this case suffered from serious, ongoing medical problems. Yet they confirmed a plan, made plan payments for three and a half years and still had an 81% overall pay history at the time they both passed away. All the requirements of § 1328(b) and Rule 1016 are present, no creditor has objected, and there are no facts in the record to show that the granting of a hardship discharge would otherwise be inequitable, unjust or unwise. For these reasons, the Court finds that its discretion is best exercised by denying the Motion to Dismiss and granting the Motion for Hardship Discharge. The Court will enter separate orders consistent with this opinion.

**Signed on August 28, 2020**



/s/ **Phillip J. Shefferly**

**Phillip J. Shefferly**
**United States Bankruptcy Judge**